20810

CREATIVE DISPLAYS, INC., Respondent. v. SOUTH CAROLINA HIGHWAY DEPARTMENT, Appellant.
(248 S.E. (2d) 916)

*Atty. Gen. Daniel R. McLeod* and *Asst. Attys. Gen. Marvin C. Jones* and *F. Kimball Joyner, Jr.,* Columbia, *for appellant.*

*John P. Mann, of Thompson, Mann & Hutson,* Greenville, *for respondent.*

November 15, 1978.

LITTLEJOHN, Justice:

The plaintiff, Creative Displays, Inc., seeks compensation for an outdoor advertising sign which was located on real property over which the defendant, South Carolina Highway Department, acquired a right-of-way easement. The case was tried without a jury by agreement; most of the facts were stipulated. It was agreed that the amount of damages, if any, which plaintiff was entitled to recover would be $20,000.

Plaintiff bases its claim to compensation for its sign on the Federal Relocation Assistance and Real Property Acquisition Act, Public Law 91-646 (January 1971), 42 U. S. C. A. § 4601, *et seq.,* and upon agreements and representations between the Department and the Federal Highway Administration. The Department contends that the sign was personal property, was not a fixture, was not acquired and that no compensation is due.

The trial judge entered an order in favor of the plaintiff, awarding $20,000.00 compensation. The Department has appealed. We find that the Federal Act is of no comfort to the plaintiff and that the sign is personal property under South Carolina law. We reverse.

On August 14, 1969, Mrs. J. M. Conway, Jr., landowner, leased certain premises along route 291 in Greenville County to Miller Outdoor Advertising, Inc., for the erection of an outdoor advertising double sign. In the summer of 1974, she sold the realty to C. F. Upchurch, *et al.,* and Upchurch succeeded to her interest. The plaintiff, Creative Displays, Inc., has succeeded to the interest of Miller Outdoor Advertising, Inc.

The lease provided for numerous events, the occurrence of any one of which would offer the plaintiff the right to terminate the lease [1] and remove the sign. These events included

---

[1] It was a five-year lease with option to renew for five additional one-year periods.

destruction, or entire or partial obscurity of the sign, diminution in value of the site as a sign location, temporary or permanent diversion of traffic, and prohibition by law or ordinance of construction or maintenance of the sign. In addition, the lease contained the following language:

"All structures, equipment and materials placed upon the said premises by the Lessee [plaintiff] *shall always remain the personal property of, and may be removed by the Lessee* at any time prior to or within a reasonable time after the expiration of the term thereof or any extension thereof.

. . . . .

If property is sold or developed, advertising structures will be removed within thirty (30) days from written notice." (Emphasis added.)

No new written lease for any of the five one-year extensions has been executed. The plaintiff continued to pay rentals to Upchurch. Within the original five-year lease period, on July 29, 1974, the landowners conveyed by way of right of-way easement deed, an easement to the defendant Highway Department. On July 12, 1974 (before the easement was signed and before the expiration of the five-year period), the Highway Department notified the plaintiff that it would be necessary to remove the sign. Three days later, on July 15, 1974, the plaintiff wrote to the Department:

"[W]e do not have a location suitable to move the structure that is located on 291. We would be happy to consider any location that you may have in mind (sic). "We would prefer to perfom any work involved in moving this unit, so we will know that it will be done properly."

On July 30, 1974, after the Department had acquired the easement, it wrote the plaintiff, advising that the sign could not hold up the construction project and advising that the sign would be removed and stored for the use of the plaintiff. On August 14, 1974, still within the five-year lease period, the Department wrote to the plaintiff:

"[P]lease accept this letter as official notice to remove the sign from the right of way within 30 days after receipt thereof."

The plaintiff refused to remove the sign and, on September 17, 1974, the Department stored it and continues to hold the same for the plaintiff.

The Department did not acquire the sign in connection with its construction project. The sign is personal property, both by stipulation of the parties to the lease and as a matter of law. A fixture is generally defined as "an article which was a chattel, but by being physically annexed to the realty by one having an interest in the soil becomes a part and parcel of it." By mere affixation the chattel does not become a fixture. The test for determining whether an item remains personalty or becomes a fixture was described in *Caroll v. Britt*, 227 S. C. 9, 86 S. E. (2d) 612 (1955). The criteria for this determination included: (1) mode of attachment, (2) character of the structure or article, (3) the intent of the parties making the annexation, and (4) the relationship of the parties. The nature and content of the lease require a determination that the sign remained personalty.

In *South Carolina State Highway Dept. v. Smith,* 253 S. C. 639, 172 S. E. (2d) 827 (1970), this court had before it the question of whether pesonal property located on realty condemned for a public purpose was compensable. We said:

"When land is taken under the power of eminent domain, the ownership of personalty kept on the premises taken, but not permanently affixed thereto, is not affected; and the owner is entitled to remove same as was done here. Actually, here the removal of the personal property was done by the landowner *before* the taking of the land and buildings thereon.

" 'A majority of the State Courts hold that, in the absence of a statute or agreement to the contrary, the removal costs of a stock of merchandise, or other personal property,

and the breakages or other injury to such property caused by such removal, from a leasehold or fee in land, where there is an entire taking of the whole of the condemnee's estate under the sovereign power of eminent domain, cannot be considered as an element of damage, since such loss is not a taking of property.' (Citations omitted) *Williams v. State Highway Commission,* 252 N. C. 141, 113 S. E. (2d) 263, 266.

"This is simply because personal property, unlike fixtures, can be removed from the condemned premises. See 4 Nichols on Eminent Domain, Sec. 13.13 (3rd ed. rev. 1962) (1969 Supp.); 27 Am. Jur. (2d) Eminent Domain Sec. 293 (1966).

" 'It is generally held that damages in condemnation proceedings should be allowed in respect of fixtures which have become a part of the reality.

" '* * * (but) compensation cannot be recovered in such a proceeding for damages resulting to personal property not annexed (at least constructively) to the freehold.' Annot. 90 A.L.R. 159-160 (1934)."

In making his determination the trial judge gave significance to § 302(1a) of the Act, which reads as follows:

Notwithstanding any other provision of law, if the head of a Federal agency acquires any interest in real property in any State, he shall acquire at least an equal interest in all buildings, structures, or other improvements located upon the real property so acquired and which he requires to be removed from such real property or which he determines will be adversely affected by the use to which such real property will be put.

The judge found ". . . that the sign or billboard in question is the type 'structure' or 'improvement' refered to in the Act." Therein we think he erred. One of the purposes of the Federal Act is to provide a uniform policy of real property acquisition practices in all cases in-

volving the use of federal funds. But the Act cannot and does not change the South Carolina Constitution and statutory law. The ". . . buildings, structures, or other improvements located upon the real property so acquired . . ." refers to buildings, structures and other improvements which have become a part of the realty, and does not refer to personal property located thereon. "Fair market value" referred to in § (b)(1), is not affected by personal property which may be removed.

In order to participate in federal funds, the Highway Department gave assurance to the federal agency as follows: "[I]n acquiring real property, it will be guided, to the greatest extent practicable under State law, by the provisions of 42 U.S.C.A. § 4652."

The obvious purpose of this agreement on the part of the Department is to assure the federal agency that its funds will not be spent under a more liberal policy than the state uses in acquiring other easements. The agreement was never intended to require the state to acquire property which it would not normally acquire if it were financing the entire project itself.

Section 460 2(b) of 42 U. S. C. A. is significant. It provides:

"Nothing in this chapter shall be construed as creating in any condemnation proceeding brought under the power of eminent domain, any element of value or of damage not in existence immediately prior to [the effective date of the act]."

The plain meaning of this provision is that the act neither adds to nor takes from elements of value or damage in the law of eminent domain as developed through the years by the General Assemblies and by the courts of the respective states.

Plaintiff's general manager testified that it was standard in the signboard trade that one had to anticipate that from time to time signs would have to be moved.

Obviously, a landowner cannot tie up valuable real estate for the meager rental received for permitting signs to be erected. This is evident from the lease here involved. The state is required to provide just compensation to a property owner deprived of property committed to a public use. Here the state has not acquired the sign; it has not deprived the plaintiff of property for which just compensation should be paid. The sign is today owned by the plaintiff, which is at liberty to procure it from the Highway Department warehouse.

The lower court erred, and its order is reversed.

NESS, RHODES and GREGORY, JJ., concur.

LEWIS, C. J., dissents.

LEWIS, Chief Justice (dissenting):

The order of the lower court correctly disposes of all issues in this appeal; and, with certain minor changes, I would adopt it as the judgment of this Court. It expresses my views and will be reported.

The order of the lower court as directed to be reported follows:

The plaintiff in this action seeks compensation for an outdoor advertising sign which was located on property over which the defendant acquired a right-of-way easement. The case was tried without a jury by agreement of the parties on April 27, 1977. Most of the facts in the case were stipulated; included was an agreement that the amount of damages which plaintiff would be entitled to recover if successful would be Twenty Thousand ($20,000.00) Dollars.

The plaintiff is engaged in the outdoor advertising business with outdoor billboards or signs in various locations. The billboard in question was located on the real estate formerly owned by Mrs. J. M. Conway, Jr., on the eastern side of North Pleasantburg Drive in Greenville County. It was a large double faced sign mounted on six steel beams which were anchored into the ground for a depth of ap-

proximately eight feet in concrete. In order to remove the sign it had to be dismantled and the steel beams had to be cut with a torch.

The sign location was leased from Mrs. Conway by Miller Outdoor Advertising, Inc. on August 15, 1969 and a printed form lease was executed. Plaintiff acquired the assets of Miller several years ago. The lease term was five years with provisions for annual extensions for up to five additional years. The lease provided that the structures placed on the premises by the Lessee would remain the property of the Lessee. The lease also contained the following typed language: "If property is sold or developed, advertising structures will be removed within thirty (30) days from written notice."

The owner subsequently sold the land and the plaintiff continued to pay rental payments to the new owners, but no new form lease was executed. On July 29, 1974 the owners of the property conveyed a right-of-way to defendant over the property on which the outdoor sign of plaintiff was located. The defendant thereafter notified the plaintiff to remove its sign. Plaintiff refused to remove the sign and it was subsequently dismantled by the defendant, removed and placed in storage. The property on which the sign was located was acquired by defendant for highway construction purposes and the project was funded in part by Federal funds.

The plaintiff contends that it is entitled to be compensated for the value of the sign. The defendant denies that plaintiff is entitled to payment but offers plaintiff the right to pick up the dismantled sign. Plaintiff bases its claim to compensation on the terms of the Federal Uniform Relocation Assistance and Real Property Acquisition Act, Public Law 91-646 (January 1971), 42 U. S. C. A. Sections 4601, *et seq.*, and agreements and representations between the defendant and the Federal Highway Administration. The defendant contends that the billboard was not a fixture and is, therefore, not compensable.

The stated purpose of the Federal Uniform Relocation Assistance and Real Property Acquisition Act is to provide a uniform policy on real property acquisition practices in all cases involving the use of Federal funds. 42 U. S. C. A. Section 4651. The Act refers to acquisitions by Federal agencies. However 42 U. S. C. A. Section 4628 provides that State agencies act as agents for Federal agencies in Federally funded projects.

42 U. S. C. A. Section 4652 provides as follows:

(a) Notwithstanding any other provision of law, if the head of a Federal agency acquires any interest in real property in any State, he shall acquire at least an equal interest in all buildings, structures, or other improvements located upon the real property so acquired and which he requires to be removed from such real property or which he determines will be adversely affected by the use to which such real property will be put.

(b) (1) For the purpose of determining the just compensation to be paid for any building, structure, or other improvement required to be acquired by subsection (a) of this section, such building, structure, or other improvement shall be deemed to be a part of the real property to be acquired notwithstanding the right or obligation of a tenant, as against the owner of any other interest in the real property, to remove such building, structure, or improvement at the expiration of his term, and the fair market value which such building, structure, or improvement contributes to the fair market value of the real property to be acquired, or the fair market value of such buildings, structure, or improvement for removal from the real property, whichever is the greater, shall be paid to the tenant therefor. (2) Payment under this subsection shall not result in duplication of any payments otherwise authorized by law. No such payment shall be made unless the owner of the land involved disclaims all interest in the improvements of the tenant. In consideration for any such payment, the tenant shall assign, transfer, and release to the United States all his right, title, and

interest in and to such improvements. Nothing in this subsection shall be construed to deprive the tenant of any rights to reject payment under this subsection and to obtain payment for such property interest in accorlance with applicable law, other than this subsection.

42 U. S. C. A. Section 4655 provides that a Federal agency shall not approve a grant to any program unless the State agency involved gives its assurance that in acquiring real property it will be guided, to the greatest extent practicable under State law, by the land acquisition policies of Sections 4651 and 4652. The defendant, by letter to the Federal Highway Administration dated June 23, 1972, gave the assurances required by 42 U. S. C. A. Section 4655.

The defendant does not contend that the Act does not apply. However, it is the defendant's position that its assurance to the Federal Highway Administration does not require the defendant to compensate the plaintiff for the sign. The defendant points out that its assurance was to "be guided to the greatest extent practicable under State law". The defendant further argues that the sign was personal property and not compensable under State law. The plaintiff does not admit that the sign is personal property but contends that such a determination is not controlling under the applicable provisions of the Act. It is further contended by defendant that the lease interest of the plaintiff can be terminated at any time within thirty days written notice and that such notice was duly given.

The defendant did give thirty days written notice to the plaintiff to cancel the lease and remove the sign. However, Section 42 U. S. C. A. 4652(b)(1) provides:

. . . such . . . structure . . . shall be deemed to be a part of the real property to be acquired notwithstanding the right or obligation of a tenant . . . to remove such . . . structure . . . at the expiration of his term, . . .

It is clear from the stated purposes of the Act that Congress intended the real property acquisition policies sections

to bring about uniform nationwide procedures for the taking of property by the Federal government or State agencies receiving Federal assistance. *Will-Tex Plastics Mfg. Inc. v. Department of HUD,* 346 F. Supp. 654 (E. D. Pa. 1972) ; *Whitman v. State Highway Commission of Missouri,* 400 F. Supp. 1050 (W. D. Mo. 1975).

The case of *Whitman v. State Highway Commission of Missouri, supra,* addresses the issues raised in this case. It is a thorough and well reasoned opinion in support of the plaintiff's position.

There were numerous signs involved in the *Whitman* case and some had written leases and others did not. The defendant, in that case, contended that the plaintiff was not a tenant within the meaning of the Act with respect to certain signs. The Court rejected this argument and stated in a footnote as follows:

The Commission has contended that these structures are not compensable under Section 302(b)(1) because they were not on the property pursuant to valid leases for a set term of years. This contention is without merit. Section 302(b)(1) does not require that structures on property acquired be present pursuant to a valid lease, but rather merely requires that such structures be present pursuant to some sort of landlord-tenant relationship between the original property owners and the owner of the structure. Regardless of the specific type of tenancy created by any of the agreements between plaintiffs and the original property owners with respect to plaintiffs' structures, plaintiffs had erected and were maintaining these structures with the consent of the original property owners, and were paying to the property owners a fee for this privilege. As such, plaintiffs were tenants within the meaning of Section 302(b)(1).

The plaintiff had its sign on the property under a valid landlord-tenant arrangement and was paying rental pursuant to this arrangement.

The court therefore finds that the defendant's First Affirmative Defense is without merit and that the cancellation of the lease by the defendant would not bar plaintiff's right of recovery.

The Second Affirmative Defense alleges that the sign was not a fixture and, hence, not compensable. Section 302(a) of the Act, 42 U. S. C. A. 4652(a), reads as follows:

Notwithstanding any other provision of law, if the head of a Federal agency acquires any interest in real property in any State, he shall acquire at least an equal interest in all buildings, structures, or other improvements located upon the real property so acquired and which he requires to be removed from such real property or which he determines will be adversely affected by the use to which such real property will be put.

The Act makes no distinction as to whether an item is a fixture or not a fixture in order to be compensable. It refers to "building, *structures,* or other improvements." The Act further makes it clear that the "right or obligation" to remove the structure does not affect the tenant's right to be compensated for the structure. The court finds that the sign or billboard in question is the type "structure" or "improvement" referred to in the Act. As stated by the court in the *Whitman case (supra):*

It would appear that an outdoor advertising structure would be particularly that type structure or improvement susceptible to removal from the property by the tenant at the end of his term.

The court finds that plaintiff's sign in this case is the type structure or improvement covered under the Act.

Defendant argues that if South Carolina law did not require payment for such sign prior to the Act, then it would not be compensable at this time in view of the wording of the assurances required and given. It is the position of the defendant that the language "to the greatest extent practicable under State law" would mean no more than what

was then required under State law. This is not the interpretation of this Court. To attach such a meaning to this provision would render it totally useless and ineffective. The court in *Whitman v. State Highway Commission of Missouri, supra,* concluded that if the State law did not prohibit such policies, then the State is required to comply. In *Beaird-Poulan, Inc. v. Department of Highways, State of Louisiana,* 497 F. (2d) 54 (5th Cir. 1974), the court stated:

It is beyond doubt that in the existing state of the law Louisiana was not *required* to pay relocation costs. As we view the issue, however, this did not necessarily mean that, in the words of the federal relocation statute, it was *unable* to do so.

No authority has been cited which would indicate that the defendant could not comply with the provisions of the Act. The court finds that compliance with the Act is required.

The court finds that the plaintiff is entitled to be compensated by the defendant for the sign in the agreed upon amount of Twenty Thousand and no/100 ($20,000.00) Dollars.

For the foregoing reasons I dissent.